UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DERICO THOMPSON,

                Plaintiff,

v.

CORIZON, INC. et al.,

                Defendants.

_____/

Case No. 2:20-cv-158

Honorable Robert J. Jonker

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Mike Brown, Jessica Knack, Wendy Ball, and Unknown Party #1 ("Doe Physician"). The Court will also dismiss Plaintiff's claims against Defendants Corizon, Inc. and Wendy Jamros for violation of Plaintiff's Fourteenth Amendment due process rights.  Plaintiff's claims against Defendants Corizon and Jamros for violation of Plaintiff's Eighth Amendment rights remain.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corizon, Inc.—an entity that contracts to provide health care services to the MDOC— KCF Warden Mike Brown, KCF Nurses Wendy Jamros, Jessica Knack, and Wendy Ball, and Unknown Party #1, named as "Doe Physician."

Plaintiff alleges that, on September 17, 2019, he injured his back on a rowing machine. The lower back pain was so severe that Plaintiff suffered a partial loss of function in his lower extremities, bowels, and bladder. Plaintiff alleges that he was seen by "Corizon, Inc." in the following weeks and days, but that the only treatment Corizon provided was medication that had no effect on Plaintiff's pain.

When Plaintiff's severe pain and numbness did not improve, he requested an MRI. "Corizon, Inc." told Plaintiff, "Pt. informed that no response to the request has been received." (Compl., ECF No. 1, PageID.3.) Defendant Jamros told Plaintiff, "[I]t is customary that Corizon Inc. must be absolutely certain that an MRI is necessary before allocating funds for any type of treatment." (*Id.*, PageID.4.) Plaintiff claims that Corizon's policy resulted in a delay and denial of necessary medical treatment and the wanton infliction of pain. Nurse Jamros also told Plaintiff, "You can stop complaining and visiting health care, we have told you time and time again, Corizon is not going to authorize surgery on your back, so either stop faking or deal with it!" (*Id.*)

On March 11, 2020, nearly six months after the injury, Plaintiff was scheduled for an MRI. The MRI revealed that Plaintiff's L-4 and L-5 discs were crushed and pressing against Plaintiff's spinal cord nerves. Nonetheless, even after the MRI, Plaintiff was not provided

adequate medical care or pain relief.  Plaintiff alleges that surgery is necessary to repair the damage
to his back.  Plaintiff reports that he is urinating and defecating without having any feeling or
sensation that his bowels or bladder were releasing.

Plaintiff makes no specific reference to Nurses Knack or Ball or "Doe Physician"
in the complaint.  Instead, he alleges that "the above mentioned Defendants were involved jointly
and severally (Personally and/or Responsibly), in either his medical care or the decision making
process concerning administering Plaintiff due process and medical examinations to diagnose
Plaintiff's ailment."  (*Id.*, PageID.5.)  With regard to his due process claim, Plaintiff states as
follows:  "Defendant nurses deprived Plaintiff of his right to adequate health care by refusing
Plaintiff health care consistent with his symptoms and conspiring with Corizon, Inc. and Mike
Brown, to delay Plaintiff's diagnosis and refusing him corrective back surgery."  (*Id.*, PageID.6.)
That allegation echoes Plaintiff's statement that Corizon, Inc. and Brown conspired to deprive
Plaintiff of adequate health care, to delay diagnosis, and to deliberately refuse to administer
surgery.  (*Id.*)

Plaintiff seeks compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While
a complaint need not contain detailed factual allegations, a plaintiff's allegations must include
more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice.").  The court must determine whether the complaint contains "enough
facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately

4

indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

5

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a

6

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Against that backdrop, the Court will examine Plaintiff's Eighth Amendment claims against each Defendant.

### A. Corizon, Inc.

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the

constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon, Inc.—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817-18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. Id.* "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the [entity] may be held liable under § 1983." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (internal quotation marks omitted). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force

of law." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (internal quotation marks omitted).

The Court concludes that Plaintiff has adequately alleged a sufficiently serious medical need to satisfy the pleading requirements for the objective prong of the Eighth Amendment analysis. Moreover, the Court concludes that Plaintiff has adequately alleged the existence of a Corizon, Inc. policy to forego MRI diagnostic testing and surgery such that the failure of the medical professionals to timely pursue either of those options reflects a deliberate indifference to Plaintiff's serious medical need. Therefore, the Court finds that Plaintiff's allegations suffice to state an Eighth Amendment claim against Defendant Corizon, Inc.

**B.      Wendy Jamros**

Plaintiff's allegations regarding Nurse Jamros likewise support an inference that Jamros was deliberately indifferent to Plaintiff's serious medical need, in application of the Corizon policy to Plaintiff and independently of that policy. Nurse Jamros is the only party alleged to have actually applied Corizon's policy to deny Plaintiff diagnostic testing and surgery. But, Nurse Jamros's deliberate indifference is also reflected in her statements that Plaintiff should "quit faking" and just "deal with it." Accordingly, the Court concludes that Plaintiff has adequately alleged the objective and subjective components of an Eighth Amendment deliberate indifference claim against Defendant Jamros.

**C.      Nurse Knack, Nurse Ball, and Unknown Party #1 ("Doe Physician")**

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must

make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555.  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

10

Plaintiff's allegations against Defendants Knack, Ball, and Unknown Party #1 fall short. The allegations consist of no more than Plaintiff's statement that these Defendants participated in his medical care and conspired with the other Defendants to delay diagnostic studies and treatment. Mere participation in Plaintiff's medical treatment does not, without more, establish the deliberate indifference necessary to state a claim under the Eighth Amendment.

Plaintiff's allegations of conspiracy similarly lack the factual detail necessary to state a claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a course of treatment that occurred over a period of time involving numerous individuals. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on an attenuated inference from the mere fact that he has been treated by various

11

healthcare providers at KCF.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.  In light of the likely possibility that the various incidents occurring over the course of Plaintiff's treatment were not related by the unlawful objective of deliberate indifference to Plaintiff's medical need, Plaintiff fails to state a plausible claim of conspiracy.

Moreover, Plaintiff's proposed conspiracy is barred by the intracorporate conspiracy doctrine.  The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510).  Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC or Corizon) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring.  *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (Corizon, as the medical contractor for the MDOC) who work at the same divisional location.  Plaintiff does not

even allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment.

For all of these reasons, Plaintiff has failed to state an Eighth Amendment claim against Defendants Knack, Ball, or Unknown Party #1.

**D.     Mike Brown**

Plaintiff alleges that Warden Mike Brown is liable for violating Plaintiff's Eighth Amendment rights, apparently on the theory that Defendant Brown is the supervisor of the healthcare personnel at KCF or on the theory that Defendant Brown conspired with the other Defendants to violate Plaintiff's Eighth Amendment rights. For the reasons set forth above, Plaintiff has failed to state a viable conspiracy claim against these Defendants. His allegations of supervisory liability fare no better.

13

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Brown engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

## IV.     Fourteenth Amendment

Plaintiff also alleges that Defendants' conduct violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. As the Supreme Court explained in *Whitley v. Albers*, 475 U.S. 312 (1986), "the Due Process Clause affords [Plaintiff] no greater protection than does the Cruel and Unusual Punishments Clause." *Id*. at 327. Because Plaintiff's "due process claims are redundant of his Eighth Amendment claims, [the Court] need only consider [Plaintiff's] claims within the context of the Eighth Amendment." *Lee v. Baker*, No. 98-1326, 1999 WL 282652, at *1 (6th Cir. Apr. 30, 1999) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994), and *Whitley*). Accordingly, Plaintiff has failed to state a separate claim for violation of his due process rights.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Brown, Knack, Ball, and Unknown Party #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claims against remaining Defendants Corizon, Inc. and Jamros. Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Corizon and Jamros remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 8, 2020            /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE